UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ARMIN AUGSTEIN,                                 :
                                                :
                    Plaintiff,                  :
                                                :          OPINION & ORDER
            -against-                           :
                                                :          11 Civ. 7512 (HB)
ANTHONY RYAN LESLIE a/k/a RYAN                  :
LESLIE and NEXTSELECTION, INC.,                 :
                                                :
                    Defendants.                 :
-----------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

      Armin Augstein brought this action to collect a reward from Ryan Leslie upon the return of Leslie's stolen laptop computer. The laptop was stolen and recovered in Germany and returned to Leslie in New York. The forum was the subject of an earlier Opinion and Order of this Court, familiarity with which is presumed. *See Augstein v. Leslie*, No. 11 CIV. 7512 HB, 2012 WL 77880 (S.D.N.Y. Jan. 10, 2012). Augstein now moves for summary judgment and for sanctions due to the alleged spoliation of evidence by Leslie. The motion is GRANTED in part and DENIED in part.

## Background[1]

      Leslie is a musician and NextSelection a company that owns the trademark to Leslie's name and performances. While on tour in Germany, Leslie's laptop computer, external hard drive, and certain other belongings were stolen. The laptop contained valuable intellectual property, including music and videos related to Leslie's records and performances. In videos, news articles, and online postings, Leslie stated that he would pay $20,000—later increased to $1 million—to anyone who returned his property. After Augstein returned the laptop and hard drive, Leslie refused to pay the reward because, Leslie alleges, the intellectual property for which he valued the laptop was not present on the hard drive when it was returned. Leslie claims that he and several staff members tried to access the data on the hard drive but were unable to do so. Leslie sent the hard drive to the manufacturer, Avastor, which ultimately deleted the information prior to sending Leslie a replacement. The circumstances of the return of the hard drive and the

---

[1] The facts are taken from the parties Rule 56.1 statements.

meaning of Leslie's communications with Avastor are disputed. Augstein claims that Leslie, after he received correspondence from Augstein regarding the collection of the reward, caused the hard drive to be erased. Augstein now argues the Court should grant him summary judgment on the issues of the validity of the offer and of the reward and its subsequent acceptance and performance by Augstein when he returned the laptop to the police in Germany. In connection with this motion, Augstein moves pursuant to Rule 37 of the Federal Rules of Civil Procedure for the Court to, among other things, preclude certain affirmative defenses due to Leslie's alleged spoliation of the evidence on the hard drive.

## Discussion

Augstein argues that Leslie made an offer of a reward for the return of his property and that Augstein accepted and fully performed when he presented the property to the police in Germany. Leslie responds that a reasonable person would not have understood the mention of the reward to be an offer of a unilateral contract, but instead would have understood it to be an advertisement—in essence, an invitation to negotiate. And even if it was an offer, Leslie continues, Augstein did not perform because he did not return the *intellectual* property, only the *physical* property. Whether or not the external hard drive, which was subsequently destroyed by Avastor, contained Leslie's intellectual property is a heavily disputed issue in this case. Augstein attempts to obviate the question through his request for sanctions against Leslie, specifically, that Leslie be precluded from arguing that the hard drive did not contain the data in question.

### I.  Summary Judgment

A district court may not grant summary judgment if there exists a genuine issue of material fact. *See Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 251 (2d Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor." *Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co.*, 421 F. App'x 52, 53 (2d Cir. 2011) (internal citations omitted). "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981). To evaluate the legitimacy of this offer, the court should consider "what an objective, reasonable person would have understood [Leslie's conduct] to convey." *Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 127 (S.D.N.Y. 1999).

Leslie mentioned the $20,000 reward for the return of his property in a YouTube video on October 24, 2010. Pl's 56.1 ¶ 13; Def's 56.1 ¶ 13. In the video, Leslie says, "I am offering a reward of $20,000." *Id.*; *see also* hoogtmz6, *Ryan Leslie Gets His Laptop Stolen in Germany! Offering $20,000 Reward*, YouTube (Oct. 26, 2010), http://www.youtube.com/watch?v=YvVPjZ-wvkE. He also implied that the lost property was worth much more than $20,000. Pl's 56.1 ¶ 13; Def's 56.1 ¶ 13. On November 6, 2010, a video was posted increasing the reward to $1,000,000. Pl's 56.1 ¶¶ 23, 24; Def's 56.1 ¶¶ 23, 24. At the end of the video, a message reads, "In the interest of retrieving the invaluable intellectual property contained on his laptop & hard drive, Mr. Leslie has increased the reward offer from $20,000 to $1,000,000 USD." RyanLeslieTV, *Ryan Leslie—European Tour and Reward Announcement*, YouTube (Nov. 6, 2010), http://www.youtube.com/watch?v=F8Jf0huEyNU. The increase of the reward was publicized on Leslie's Facebook and Twitter accounts, including a post on Twitter which read, "I'm absolutely continuing my Euro tour + I raised the reward for my intellectual property to $1mm" and included a link to the video on YouTube. Pl's 56.1 ¶¶ 28, 31; Def's 56.1 ¶¶ 28, 31. News organizations also published reports on Leslie's reward offer, both in print and online. Pl's 56.1 ¶¶ 32, 33, 35; Def's 56.1 ¶¶ 32, 33, 35. Finally, Leslie was interviewed on MTV on November 11, 2010, and reiterated the $1,000,000 reward, saying "I got a million dollar reward for anybody that can return all my intellectual property to me." Pl's 56.1 ¶¶ 37; Def's 56.1 ¶¶ 37.

Leslie's videos and other activities together are best characterized as an offer for a reward. Leslie "sought to induce performance, unlike an invitation to negotiate [often an advertisement], which seeks a reciprocal promise." *Leonard*, 88 F. Supp. 2d at 125 (discussing *Carlill v. Carbolic Smoke Ball Co.,* [1892] 1 Q.B. 256 (Eng.). Offers of reward are "intended to induce a potential offeree to perform a specific action." *Id.* at 126. A reasonable person viewing the video would understand that Leslie was seeking the return of his property and that by returning it, the bargain would be concluded. The increase of the reward from $20,000 to $1,000,000, the value of the property lost (in particular the unreleased album) and the news reports regarding the reward offer would lead a reasonable person to believe that Leslie was making an offer. As such, the video constitutes a valid offer and summary judgment is granted as to that issue. "[I]f a person chooses to make extravagant promises . . . he probably does so because it pays him to make them, and, if he has made them, the extravagance of the promises is

no reason in law why he should not be bound by them." *Id.* at 125 (quoting *Carbolic Smoke Ball*, 1 Q.B. at 268 (Bowen, L.J.)).

Leslie attempt to persuade the court that the video is not an offer but an advertisement. Because advertisements, Leslie argues, are not generally considered offers, there is no contract. Def's Opp'n 13–14. He cites *Leonard v. Pepsico*, where the court did find an advertisement rather than an offer, to support that argument. However, unlike the television commercial in *Leonard*, Leslie's conduct in this case was meant to induce performance. Leslie was not seeking a promise from an individual who would return his belongings, rather he was seeking performance—the actual return of his property. In addition, his videos and other commentary cannot be reasonably understood as an invitation to negotiate because, similarly, Leslie was not soliciting help in finding his property, but the actual return itself. Leslie also relies on the fact that the offer was conveyed over YouTube (a website where many advertisements and promotional videos are shared, along with any number of other types of video) to undermine the legitimacy of the offer. Def's Opp'n 14–15. I do not find this reasoning persuasive. The forum for conveying the offer is not determinative,[2] but rather, the question is whether a reasonable person would have understood that Leslie made an offer of a reward. I conclude that they would.

## II. Sanctions

Sanctions may be imposed for violating a court order, or if no court order is in place, sanctions may be imposed pursuant to the inherent power of the Court. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citations omitted)). A party seeking sanctions based on spoliation of evidence must prove the following:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 288 (S.D.N.Y. 2011) (internal quotation marks omitted) (citing *Residential Funding Corp. v.*

---

[2] Several courts have held that an offer was legitimate despite the fact that the offer was conveyed via television or radio. *See, e.g.*, Newman v. Schiff, 778 F.2d 460, 466 (8th Cir. 1985) (Schiff's statement on television program was a valid offer for reward); James v. Turilli, 473 S.W.2d 757, 760 (Mo. Ct. App. 1971) (Turilli's statement in front of a nationwide television audience was a valid offer for reward).

4

*DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). A party has an obligation to preserve evidence when "the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 148 (2d Cir. 2008) (quoting *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 436 (2d Cir. 2001)).

In this case, Leslie was on notice that the information on the hard drive may be relevant to future litigation and, as a result, had an obligation to preserve that information. Augstein contacted Leslie personally and through his attorney regarding the payment of the reward, and a short time later, the hard drive was sent by Leslie to Avastor. Pl.'s 56.1 ¶ 84. Leslie does not dispute these facts. Defs' Resp. to Pl.'s 56.1 ¶ 84. Augstein retained an attorney and demanded payment of the reward; the initiation of litigation was to be expected.

Whether a party must prove that the destroyed evidence is relevant to a claim or defense depends on the level of culpability. "When evidence is destroyed in bad faith (*i.e.,* intentionally or willfully), that fact alone is sufficient to demonstrate relevance. By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). The contents of the hard drive are undoubtedly relevant, regardless of the culpability. The satisfactory performance of the offer of the reward depends on the return of Leslie's intellectual property.

The more difficult question here is what level of culpability is required to impose sanctions as a result of spoliation of the hard drive. Augstein contends that negligence is sufficient in the Second Circuit, while Leslie argues that the law is unsettled in this area. Pl's Supp. 23; Defs' Opp'n 9. As discussed above, sanctions are appropriate only when the party acted with a "culpable state of mind". In addition, the party's culpability bears on the severity of the sanctions that should be imposed. *See Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 140 (S.D.N.Y. 2009); *see also De Espana v. Am. Bureau of Shipping*, No. 03 Civ. 3573, 2007 WL 1686327, at *3 (S.D.N.Y. June 6, 2007) ("Severe sanctions for discovery violations, including dismissal, may be imposed for intentional conduct, such as bad faith or gross negligence. However, dismissal of the action as a sanction for breach of discovery obligations is a drastic penalty only for extreme circumstances. Lesser sanctions, such as an adverse inference instruction, may be imposed where a party has breached a discovery obligation through ordinary negligence." (citations omitted)).

The Second Circuit, in *Byrnie v. Town of Cromwell Board of Education.*, 243 F.3d 93 (2d Cir. 2001), commented on the seemingly conflicting precedent. The court wrote:

> The law in this circuit is not clear on what state of mind a party must have when destroying it. In *Reilly v. Natwest Markets Group Inc.,* we noted that at times we have required a party to have intentionally destroyed evidence; at other times we have required action in bad faith; and at still other times we have allowed an adverse inference based on gross negligence. *See Reilly v. Natwest Mkts. Group Inc.,* 181 F.3d 253, 267 (2d Cir.1999), *cert. denied,* 528 U.S. 1119 (2000). In light of this, we concluded a case by case approach was appropriate.

*Byrnie*, 243 F.3d at 107–08. In accordance with this "case by case approach," the Second Circuit held that negligence constituted a culpable state of mind in *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) ("The sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence."); *see also Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 194–95 (N.D.N.Y. 2009) (discussing the *Byrnie* and *Residential Funding* decisions). In an earlier decision, the Second Circuit emphasized that the destruction of evidence "occur[s] along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (citing *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988)). The court continued, "Trial judges should have the leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing—a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case." *Id.*

Several other cases support the contention that sanctions can be imposed even if the destruction was unintentional and the party responsible was merely negligent. *See, e.g.*, *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 11 Civ. 1299 HB, 2012 WL 1849101 (S.D.N.Y. May 21, 2012) ("A party must act with a culpable state or mind, negligently at a minimum."); *Cedar Petrochemicals*, 769 F. Supp. 2d at 289 (discussing that the culpability standard includes negligence); *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 195-96 (S.D.N.Y. 2007) ("But the responsible party need not have acted intentionally or in bad faith; negligence alone is sufficient to justify the imposition of some sanction."); *Great N. Ins. Co. v. Power Cooling, Inc.*, 06 Civ. 874, 2007 WL 2687666, at *8 (E.D.N.Y. Sept. 10, 2007) ("To warrant the imposition of a lesser sanction [than dismissal], such as an adverse inference instruction, a party need only act

"knowingly, even if without intent to [breach a duty to preserve the evidence], or negligently."); *Zubulake*, 220 F.R.D. at 220 ("In this circuit, a culpable state of mind for purposes of a spoliation inference includes ordinary negligence.") (internal quotation marks omitted) (citations omitted).

The parties disagree about several facts that bear on the culpability of Leslie and his team. These facts demonstrate the effort and care that Leslie and his team took to preserve and retrieve the data. Leslie stated that he and his team never discussed consulting with an outside vendor or computer company to try to recover the data. Leslie Dep. at 186. However, Najafi, one of Leslie's assistants, stated that he took the hard drive to a technician at TekServe and consulted a few other professionals, who all said the drive could not be repaired. Najafi Dep. at 11, 52–53. There is also a dispute regarding the sequence of events that surround the return of the drive to Avastor, the manufacturer. Najafi stated that he contacted Avastor and requested data retrieval but was later contacted by Avastor and told that the data could not be recovered. Pl.'s 56.1 ¶ 93; Def's Resp. to Pl.'s 56.1 ¶ 89. At that point, he says Avastor asked if he wanted the company to ship replacement drives. *Id*. After talking with Leslie, Najafi testified that he told the representative to ship replacement drives. *Id*. This account is undisputed by Leslie, but it is not consistent with the documents that Avastor provided in response to Austein's subpoena. The statements by Jahret Sylvester, an employee at Avastor, and the records produced by Avastor indicate that a request for data recovery was not made by Leslie or anyone on his team. Pl.'s 56.1 ¶ 89. Leslie does not dispute this, Def's Resp. to Pl.'s 56.1 ¶ 89, or dispute that the records reflect that the hard drive was not shipped to Avastor until after the replacement drive had been sent to Najafi, which is contrary to Najafi's testimony, Pl.'s 56.1 ¶¶ 86, 87; Def's Resp. to Pl.'s 56.1 ¶¶ 86, 87.

Based on the foregoing, and the inescapable fact that the hard drive was destroyed when litigation was all but certain, I find that Leslie and his team were at least negligent in their handling of the hard drive. *See, e.g.*, *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 357 (S.D.N.Y. Apr. 20, 2012), *aff'd*, 11 Civ. 1299 HB, 2012 WL 1849101 (S.D.N.Y. May 21, 2012) ("Nevertheless, even if GenOn's actions or failures to act do not rise to the level gross negligence, its conceded failure . . . plainly constitutes negligence." (citation omitted)); *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 196 (S.D.N.Y. 2007) ("Therefore, it was at least grossly negligent for plaintiffs' counsel to permit the Gulfport documents to be destroyed . . . .); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 221 (S.D.N.Y. 2003) ("Because UBS was

negligent—and possibly reckless—Zubulake has satisfied her burden with respect to the second prong of the spoliation test."). I therefore impose a sanction of an adverse inference; it shall be assumed that the desired intellectual property was present on the hard drive when Augstein returned it to the police. *See, e.g., Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) ("The sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence."); *Turner v. Hudson Transit Lines*, 142 F.R.D. 68, 76 (S.D.N.Y. 1991) ("An adverse inference is the mirror image of a preclusion order: it supplies evidence which was once in the power of one party to produce, but which, because of the conduct of that party, cannot now be offered at trial. The evidentiary imbalance caused by the spoliation does not depend on that party's intent; therefore, bad faith, while a significant consideration, should not be an absolute prerequisite to drawing an adverse inference.").

## Conclusion

I have considered the parties' other arguments and find them without merit. Augstein's motion for summary judgment is GRANTED insofar as he seeks a declaration that the reward was an offer and sanctions for the negligent destruction of the hard drive. The motion is otherwise DENIED. The trial is scheduled to begin on November 26, 2012, at 9:30 A.M. The Clerk of Court is instructed to close the open motions and remove them from my docket.

SO ORDERED.

Date: 10/17/12
New York, New York

HAROLD BAER, JR.
United States District Judge